In The
Court of Appeals
Sixth Appellate District of Texas at Texarkana

______________________________

No. 06-03-00071-CV
______________________________


ALAN BRAD KENT, INDIVIDUALLY AND AS
INDEPENDENT EXECUTOR OF THE ESTATE OF
LINDA ANN MCWHORTER, DECEASED, AND
CASSIE ELIZABETH KENT, Appellant
 
V.
 
TOMMY JOE HOLMES, Appellee


                                              

On Appeal from the County Court at Law
Panola County, Texas
Trial Court No. 2002-328


                                                 



Before Morriss, C.J., Ross and Carter, JJ.
Opinion by Justice Carter


O P I N I O N

            The dispute in this case concerns the distribution of a retirement annuity from the Teacher
Retirement System of Texas (TRS) accumulated by Linda Ann Holmes McWhorter. After
McWhorter retired from her teaching career, she and her husband, Tommy Joe Holmes, obtained a
divorce. The divorce decree granted McWhorter sole right to the retirement benefits and divested
Holmes of any right to the benefits. TRS refused to recognize the divorce decree as a court order
which changed the beneficiary of the annuity and determined the form on which McWhorter
attempted to change beneficiaries did not suffice. McWhorter died before TRS approved a
beneficiary change. On McWhorter's death, TRS began making annuity payments to Holmes. Alan
Brad Kent, individually and as independent executor of the estate of Linda Ann McWhorter,
deceased, and Cassie Elizabeth Kent (collectively "the Kents") appeal from a partial summary
judgment in Holmes' favor. The Kents raise nine issues on appeal. We affirm in part, reverse in
part, and remand for a trial on the merits consistent with this opinion.
Facts
            On May 31, 1997, McWhorter retired after a lifetime of public service of educating the
school children of the State of Texas. At the time of her retirement, McWhorter had designated
Holmes as beneficiary of her TRS optional annuity benefit. 
            On June 25, 1998, McWhorter provided TRS with a designation of beneficiary on TRS
Form 11 which appointed Alan Brad Kent and Cassie Elizabeth Kent as joint beneficiaries for "any
payments which may be due under the Teacher Retirement System . . . following my death . . . ." 
On July 9, 1998, McWhorter executed a handwritten letter requesting that TRS remove Holmes as
a beneficiary under her TRS retirement plan. On August 3, 1998, TRS sent McWhorter a letter
stating that, under Section 824.1012 of the Texas Government Code, her husband could not be
removed as beneficiary unless either he consented or a court ordered the change. On May 26, 1999,
a hearing was held in the County Court at Law of Panola County, Texas, concerning the divorce of
McWhorter and Holmes. On July 12, 1999, the trial court entered a decree of divorce. On
September 3, 1999, a nunc pro tunc decree of divorce concerning the marriage was entered. The
decree stated in pertinent part as follows:
RESPONDENT, LINDA ANN HOLMES, is awarded the following as her
sole and separate property, and Petitioner is hereby divested of all right, title, interest,
and claim in and to such property: . . . . 
 
Any and all sums, whether matured or unmatured, accrued or unaccrued, vested or
otherwise, together with all increases thereof, the proceeds therefrom, and any other
rights related to Respondent's retirement benefits through the Teacher Retirement
System, and any other profit-sharing plan, retirement plan, pension plan, employee
stock option plan, employee savings plan, accrued unpaid bonuses, or other benefit
program existing by reason of Respondent's past or present employment.
Additionally, the decree states in pertinent part as follows:
            Execution of Documents. IT IS ORDERED AND DECREED that Petitioner,
TOMMY JOE HOLMES, and Respondent, LINDA ANN HOLMES, shall execute
all instruments necessary to effect this decree and that Petitioner and Respondent
shall have all appropriate and necessary writs, execution and process, as many and
as often as is necessary to accomplish the execution and final disposition of this
judgment.

On February 24, 2000, McWhorter's attorney provided TRS with a certified copy of the nunc pro
tunc divorce decree. On July 24, 2000, TRS responded to McWhorter's attorney and acknowledged
receipt of the divorce decree. However, TRS stated that the decree did not order a change in the
beneficiary and suggested language to be included in a modification of the decree. The TRS letter
stated that a "court order alone does not change the designation of beneficiary" and that McWhorter
would also have to submit a designation of beneficiary on Form 30C. On June 22, 2000, McWhorter
executed a last will and testament leaving the residue of her estate to her son.
            On January 5, 2002, McWhorter died in Tyler, Texas, at the age of fifty-eight. The Kents
received a $10,000.00 lump sum payment pursuant to the Form 11 designation. Beginning in
February of 2000, Holmes began receiving annuity payments for the option five annuity. 
            On October 17, 2002, the Kents filed a petition for enforcement of the divorce decree
requesting damages, a constructive trust, and an injunction. Holmes filed an answer, a plea to the
jurisdiction, and a counterclaim for a declaratory judgment and attorney's fees. On January 8, 2003,
Holmes filed a motion for partial summary judgment alleging that there was no breach of the divorce
decree, there was no evidence that the beneficiary had been changed, the annuity could not be
assigned, the statute of limitations barred the suit, and the suit exceeded Section 9.007 of the Texas
Family Code since it went beyond clarifying and enforcing the divorce decree. See Tex. Fam. Code
Ann. § 9.007 (Vernon 1998). On April 29, 2003, the trial court granted Holmes' motion for partial
summary judgment, which disposed of all of the Kents' claims. In the order granting the partial
summary judgment, the trial court stated that the summary judgment was based on the Kents' failure
to present "proof of compliance with applicable statutes governing Teacher Retirement System and
Teacher Retirement System's rules and regulation[s]." Holmes' counterclaim was severed, making
the judgment final. 
Standard of Review
            When reviewing a summary judgment, we take as true all evidence favorable to the
nonmovant and indulge every reasonable inference and resolve any doubts in the nonmovant's favor. 
Limestone Prods. Distribution, Inc. v. McNamara, 71 S.W.3d 308, 311 (Tex. 2002); Rhone-Poulenc,
Inc. v. Steel, 997 S.W.2d 217, 223 (Tex. 1999). 
            Summary judgment is proper when the movant establishes that there is no genuine issue of
material fact and that he is entitled to judgment as a matter of law. Tex. R. Civ. P. 166a(c); City of
Houston v. Clear Creek Basin Auth., 589 S.W.2d 671, 676 (Tex. 1979); Baubles & Beads v. Louis
Vuitton, S.A., 766 S.W.2d 377, 379 (Tex. App.—Texarkana 1989, no writ). The question on appeal
is not whether the summary judgment proof raises a fact issue with reference to the essential
elements of the movant's cause of action, but whether the summary judgment proof establishes that
the movant is entitled to summary judgment as a matter of law. Gonzalez v. Mission Am. Ins. Co.,
795 S.W.2d 734, 736 (Tex. 1990). Because the movant bears the burden of proof, all conflicts in
the evidence are disregarded, evidence favorable to the nonmovant is taken as true, and all doubts
as to the genuine issues of material fact are resolved in favor of the nonmovant. Nixon v. Mr. Prop.
Mgmt. Co., 690 S.W.2d 546, 548–49 (Tex. 1985). 
Summary
            The Kents' suit rests on two separate theories: 1) that McWhorter changed the beneficiary
of the annuity and 2) that Holmes was divested of McWhorter's retirement in the divorce. We affirm
the trial court's summary judgment concerning the holding that McWhorter did not change the
beneficiary. However, the failure to change the beneficiary does not alter the fact that Holmes was
divested of all right, title, and interest to such property and the proceeds therefrom by the divorce
judgment. Since the divorce decree divested Holmes of all rights and interests to McWhorter's
retirement, any acceptance of payments violates the divorce decree unless McWhorter's intent after
the divorce was for Holmes to be the beneficiary. Although Holmes is the designated beneficiary,
the divorce decree granted McWhorter both the ownership and beneficiary interest in the annuity
payments. Thus, a constructive trust should attach to funds paid from TRS to Holmes unless it is
shown that McWhorter intended, after the divorce, to give the annuity to Holmes. A fact issue exists
concerning whether McWhorter intended that Holmes receive the annuity. We also determine that
the statute of limitations does not bar suit and that any error concerning the lack of authentication
of the exhibits was not preserved for review. Last, we consider the points of error concerning the
remedies sought by the Kents. The change of ownership and beneficiary interests in the divorce was
not an assignment controlled by the nonassignability clause applicable to the retirement funds. The
Kents have asserted that equity demands that the contract with TRS be reformed to reflect that the
Kents are now the beneficiaries. However, reformation of contract is not an available remedy in the
absence of inequitable conduct on the part of TRS. Because a fact issue exists, we reverse and
remand the judgment. Designation of Beneficiary
            In their first, sixth, eighth, and ninth points of error, the Kents allege that TRS's construction
of the statute is erroneous. The Kents argue that McWhorter's designation of her son and
daughter-in-law as joint beneficiaries on TRS Form 11 is a clear intention of a change in beneficiary
sufficient to change the beneficiary under the governing statute. In the alternative, the Kents contend
the form indicates a clear intent to remove Holmes as a beneficiary. The Kents argue that the
submitted TRS Form 11 at the very least creates a fact issue as to the intention to change the
beneficiary. 
            On June 25, 1998, McWhorter provided TRS with a designation of beneficiary on TRS
Form 11, which appointed Alan Brad Kent and Cassie Elizabeth Kent as joint beneficiaries. The
submitted form reads in pertinent part as follows:
PRIMARY BENEFICIARY OR JOINT PRIMARY BENEFICIARIES
 
I hereby designate the following person(s) as my primary beneficiary(ies) to receive
any payments which may be due under the Teacher Retirement System Law of the
State of Texas following my death (joint beneficiaries to share alike, with right of
survivorship only):

                        . . . .
 
When received by the Teacher Retirement System, this form revokes any previous
beneficiary designation made by the member on a prescribed Teacher Retirement
System form.
This form is the most recent designation of a beneficiary in the record. 
            The Kents argue that, under the plain language of the form and Section 824.101(d) of the
Texas Government Code, this form changed the beneficiary of the annuity. Section 824.101(d) of
the Texas Government Code provides as follows: 
Unless a contrary intention is clearly indicated by written designation of beneficiary
and except as otherwise provided by this section, the most recent designation of
beneficiary by a member or annuitant applies to all benefits payable on the death of
the member or annuitant.

Tex. Gov't Code Ann. § 821.101(d) (Vernon Supp. 2004). The Kents argue that TRS's construction
would render Section 824.101(d) useless or surplusage. Cf. Laidlaw Waste Sys. (Dallas), Inc. v. City
of Wilmer, 904 S.W.2d 656, 659 (Tex. 1995); Chevron Corp. v. Redmon, 745 S.W.2d 314, 316 (Tex.
1987). Further, the Kents contend the requirement of specific language requested by TRS that the
order state "that the designation of Tommy J. Holmes as the beneficiary . . . be changed . . . ." is an
unreasonable construction and inconsistent with the statute. 
            Holmes contends the divorce decree is not sufficient to order a change in the beneficiary.


 
Section 824.1013 provides:
(a) A retiree receiving an optional retirement annuity under Section
824.204(c)(1), (c)(2), or (c)(5) or Section 824.308(c)(1), (c)(2), or (c)(5) may change
the designated beneficiary as provided by this section for the benefits payable after
the retiree's death under those sections.
 
(b) If the beneficiary designated at the time of the retiree's retirement is the
spouse or former spouse of the retiree:
 
(1) the spouse or former spouse must give written, notarized consent
to the change; or
(2) a court with jurisdiction over the marriage must have ordered the
change.

Tex. Gov't Code Ann. § 824.1013 (Vernon Supp. 2004). The parties' dispute concerns whether a
decree which divests a person of all interest in a retirement plan is sufficient to order a change in
beneficiary.
            TRS has interpreted the above statute to require a court to specifically order a change in the
beneficiary. According to TRS, an order which divests a beneficiary of all interest in the retirement
and proceeds thereof is not sufficient to order a change of the beneficiary. TRS contends the
beneficiary was never actually changed because Holmes did not give written consent and the court
order is insufficient to order a change. TRS argues that no change of beneficiary is effective unless
it is submitted on the proper form. TRS asserts that this strict interpretation gives consistency and
protects the State from litigation. 
            The Texas Supreme Court has held that "'[a] statute of doubtful meaning that has been
construed by the proper administrative officers, when re-enacted without any substantial change in
verbiage, will ordinarily receive the same construction.' This rule is only applicable where there has
been an affirmative long-standing administrative policy." Sharp v. House of Lloyd, Inc., 815 S.W.2d
245, 248 (Tex. 1991) (alteration in original) (quoting Humble Oil & Ref. Co. v. Calvert, 414 S.W.2d
172, 180 (Tex. 1967)); see Fleming Foods v. Rylander, 6 S.W.3d 278, 282 (Tex. 1999). An agency's
construction of a statute cannot contradict the statute's plain meaning. Fleming Foods, 6 S.W.3d at
282. Further, the agency's construction must also be reasonable and not inconsistent with the statute. 
Id.; see Cont'l Cas. Co. v. Downs, 81 S.W.3d 803, 807 (Tex. 2002). 
            The Kents contend that TRS's construction of the statute would create an "absurd result," is
surplusage, and unreasonable. The Kents' argument fails because the Texas Government Code
provides that only one person may be designated as the beneficiary of an optional retirement annuity. 
While an optional annuity may be able to be calculated based on multiple beneficiaries, the statute
limits an option five annuity to a single beneficiary. Section 824.101(c) provides that:
Only one person may be designated as beneficiary of an optional retirement annuity
under Section 824.204(c)(1), (c)(2), or (c)(5), and a designation of beneficiary under
any of those options may not be made, changed, or revoked, except as provided by
Sections 824.1011, 824.1012, and 824.1013, after the later of the date on which the
retirement system makes the first annuity payment to the retiree or the date the first
payment becomes due. For purposes of this section, the term "makes payment"
includes the depositing in the mail of a payment warrant or the crediting of an
account with payment through electronic funds transfer.




Tex. Gov't Code Ann. § 824.101(c) (Vernon Supp. 2004) (emphasis added). McWhorter
designated Alan Brad Kent and Cassie Elizabeth Kent as joint beneficiaries on TRS Form 11. Under
Section 824.101, McWhorter was only allowed to designate one beneficiary.


 Because only one
person may be appointed the beneficiary of an optional retirement plan, McWhorter failed to change
the beneficiary concerning the optional retirement annuity. Her designation of joint beneficiaries
could not apply to the optional annuity because the Texas Government Code restricts the designation
to a single beneficiary. We find that McWhorter did not fulfill all statutory requirements to change
the beneficiary. We overrule the Kents' first point of error.
Sanderlin Case
            When McWhorter and Holmes divorced, he was divested of all rights to her retirement. The
Kents contend the trial court erred because Holmes' acceptance of the annuity payments violates the
divorce decree. In support of their argument, the Kents cite Sanderlin v. Sanderlin, 929 S.W.2d 121
(Tex. App.—San Antonio 1996, writ denied). Holmes argues that Sanderlin is distinguishable. 
Although Holmes is the beneficiary under the statute, he may not ultimately be entitled to the
payments. Because the divorce decree divested Holmes of all interest in the retirement, a fact issue
exists as to whether Holmes can accept payments on the retirement annuity. Although the statute
has been modified and the beneficiary has not been changed, we hold that the reasoning of Sanderlin
applies in determining who ultimately receives the payments.
            In Sanderlin, the retiree designated his wife of five months as a beneficiary after the divorce
had been filed, but before the divorce decree was final. Id. at 122. Thereafter, the parties divorced
and the wife was divested of such property. The husband then died. The court specifically noted
that "[t]he divorce decree was subsequent to the beneficiary form." Id. The San Antonio Court of
Appeals held that an acceptance of death benefits by the wife constituted a breach of contract of the
divorce settlement, which divested her of any right to the plan. Id. at 123. 
            The Sanderlin court appears to have concluded that the divorce decree changed the
beneficiary. At that time, Section 824.101(d) provided that "[u]nless a contrary intention is clearly
indicated by a written designation of beneficiary and except as otherwise provided by law, the most
recent designation of beneficiary by a member or annuitant applies to all benefits payable on the
death of the member or annuitant." Act of May 4, 1989, 71st Leg., R.S., ch. 179, § 1, 1989 Tex.
Gen. Laws 665 (emphasis added), amended by Act of May 29, 1997, 75th Leg., R.S., ch. 1416, § 12,
1997 Tex. Gen. Laws 5300. The Sanderlin court concluded that the divorce settlement fell within
the "except as otherwise provided by law" clause and that the wife was no longer the beneficiary. 
Sanderlin, 929 S.W.2d at 123.
            Retirement benefits earned by the employee spouse during marriage are community property
and subject to division on divorce. Stavinoha v. Stavinoha, 126 S.W.3d 604, 610 (Tex.
App.—Houston [14th Dist.] 2004, no pet.). Holmes argues that the divorce only divested him of
ownership interest in the retirement and that he could retain his beneficiary interest. In essence,
Holmes argues, even though the divorce decree divests him of all rights to the retirement benefits
and proceeds therefrom, he is entitled to receive the annuity. A divorce decree is construed by the
rules relating to construction of a judgment. Acosta v. Acosta, 836 S.W.2d 652, 654 (Tex. App.—El
Paso 1992, writ denied). According to the rules relating to construction of judgments, the effect of
a divorce decree should be declared "in light of the literal meaning of the language used." Id.
(quoting Lohse v. Cheatham, 705 S.W.2d 721, 726 (Tex. App.—San Antonio 1986, writ dism'd)). 
Under Texas common law, the beneficial interest of an insurance policy may be terminated by the
divorce decree where it clearly appears from the decree that it was intended to deprive the spouse
of the right to take as beneficiary under an insurance policy on the life of the other.


 Courts
distinguish ownership rights from beneficiary rights, but a divorce decree which divests of all
interests prevents a spouse from retaining his or her beneficiary rights. Gillespie v. Moore, 635
S.W.2d 927, 928 (Tex. App.—Amarillo 1982, writ ref'd n.r.e.); see Nichols v. Nichols, 727 S.W.2d
303, 305 (Tex. App.—Beaumont 1987, writ ref'd n.r.e.) (failure to divest of beneficiary interest
allows ex-spouse to recover). In Conn v. Trow, this Court held that a divorce decree which granted
a former spouse "'[a]ny and all proceeds from Respondent's retirement plan" prevented his ex-spouse
from collecting death benefits as the designated beneficiary. 715 S.W.2d 152, 153 (Tex.
App.—Texarkana 1986, no writ). Thus, the divorce decree which divested Holmes of "all right, title,
interest and claim" to McWhorter's TRS retirement and "proceeds therefrom" divested Holmes of
his beneficiary interest as well as his ownership interest.
            Approximately twenty-seven months elapsed from the time of the divorce and McWhorter's
death. Holmes argues that the failure by McWhorter to change the beneficiary as required by statute
shows she intended for him to receive the annuity at her death. We have found that the divorce
decree divested him of all interest and granted her all interest, which would include the right to
designate the beneficiary. Since McWhorter did not change the beneficiary as required by law after
the divorce, we agree that a fact issue exists concerning whether McWhorter intended to give the
annuity benefits to Holmes. Viewing the evidence in a light most favorable to the nonmovant, more
than a scintilla of evidence exists that McWhorter intended for the Kents to receive her retirement
benefits. McWhorter executed a handwritten letter requesting that TRS remove Holmes as a
beneficiary under her TRS retirement plan and provided TRS with a designation of beneficiary on
TRS Form 11, which appointed Alan Brad Kent and Cassie Elizabeth Kent as joint beneficiaries for
"any payments which may be due under the Teacher Retirement System . . . following my death
. . . ." At a minimum, these actions raise a genuine issue of material fact as to whether McWhorter
intended the Kents to be the beneficiaries.
            Holmes makes five arguments in support of his contention that Sanderlin is distinguishable. 
Holmes contends the reasoning of Sanderlin should not apply because 1) of the lack of a settlement
agreement governing this divorce, 2) McWhorter intended to retain Holmes as the beneficiary,
3) Sanderlin has never been cited for any issue relevant to this case, 4) of the subsequent amendment
of Section 824.101, and 5) the Sanderlin approach is not practical. We have already addressed
Holmes' second argument and held that, at a minimum, a fact issue exists as to whether McWhorter
intended that Holmes receive the annuity.
            In his first distinction, Holmes contends the lack of a settlement agreement renders the
reasoning of Sanderlin inapplicable. A breach of a settlement agreement should not be treated any
differently than a breach of a divorce decree. See Ex parte Gorena, 595 S.W.2d 841, 844 (Tex.
1979). "The fact that a judgment is rendered by consent gives it neither less nor greater force or
effect than it would have had it been rendered after protracted litigation, except to the extent that the
consent excuses error and operates to end all controversy between the parties." Gorena, 595 S.W.2d
at 844; Wagner v. Warnasch, 156 Tex. 334, 295 S.W.2d 890, 893 (1956). While Holmes cannot be
said to have waived any right by virtue of a settlement agreement, the divorce decree prevents him
from accepting the benefits.
            The third distinction argued by Holmes is that Sanderlin has not been cited by any other case
that is relevant to any issue in this case. The mere fact that a case has not been cited for a particular
issue does not invalidate its persuasiveness.
            Holmes' fourth argument is that the legislative amendment renders Sanderlin "obsolete and
moot." After Sanderlin was decided, the Texas Legislature amended Section 824.101(d) to replace
the "except as otherwise provided by law" with the clause "except as provided by Sections 824.1011
and 824.1012." See Act of May 29, 1997, 75th Leg., R.S., ch. 1416, § 12, 1997 Tex. Gen. Laws
5300, amended by Act of May 30, 1999, 76th Leg., R.S., ch. 1540, § 6, 1999 Tex. Gen. Laws 5284. 
In addition, the Texas Legislature added a subsection (g) to 824.101 which provides:
(g) Receipt by the retirement system of a certified copy of a divorce decree
between a member or annuitant and a designated beneficiary revokes any designation
of the former spouse as beneficiary of any death benefits payable under Subchapter E
or F of this chapter that was effective before the date of divorce, if the decree is
received by the retirement system before the payment of any part of the death benefit
to any beneficiary.

Id. The Legislature also added Sections 824.1012 and 824.1013. Id. Holmes contends these
amendments solve the lump sum benefit issue in Sanderlin and provide for the change of beneficiary
of an optional annuity. This argument fails, however, because Holmes was divested of all rights
under the retirement plan and, by accepting the retirement benefits, Holmes is breaching the divorce
decree. While the beneficiary can no longer be changed as occurred in Sanderlin, the relative rights
of McWhorter and Holmes are controlled by the divorce judgment.
            Holmes makes a final argument that the approach argued by the Kents is not practical. 
Holmes contends that TRS will not honor any change in the beneficiary, the Internal Revenue
Service will continue to tax Holmes for the benefit, and Holmes will have a cause of action against
the estate for the taxes. Although there may be practical difficulties, we must honor the divorce
judgment. We sustain the Kents' third point of error.
Statute of Limitations
            In their second point of error, the Kents challenge the applicability of Section 9.003(b) of the
Texas Family Code to the suit in question. The Kents contend this limitations period does not apply
because this is not a suit to compel division of property. In the alternative, the Kents argue that the
property accrued within two years of filing the suit.
            Orders for enforcement and clarification may more precisely specify the manner of carrying
out the property division previously ordered so long as the substantive division of the property is not
altered. McPherren v. McPherren, 967 S.W.2d 485, 490 (Tex. App.—El Paso 1998, no pet.). Such
orders must be made on a finding, express or implied, that the original form of the division of
property lacks sufficient specificity to be enforced by contempt. Id. The Texas Family Code
expressly prohibits a post-judgment modification of a division of property contained in a decree of
divorce. Kadlecek v. Kadlecek, 93 S.W.3d 903, 909 (Tex. App.—Austin 2002, no pet.). Retirement
benefits earned by the employee spouse during marriage are community property and subject to
division on divorce. Stavinoha, 126 S.W.3d at 610.
            The Kents contend Section 9.003 does not apply because this is not a suit for division of
property, but rather a suit for enforcement of a division of property. The Kents cite Jenkins v.
Jenkins, 991 S.W.2d 440, 445 (Tex. App.—Fort Worth 1999, pet. denied), for the proposition that
Section 9.003 does not apply. In Jenkins, the Fort Worth Court of Appeals held that a suit to compel
payment of alimony payments was not a suit "to compel a division of property via his motion to
enforce." Id. This case is distinguishable from Jenkins because there had been a division of
property. Jenkins stands for the proposition that an agreement incidental to a divorce which awards
alimony is not a division of property. See id. The motion to enforce involved a "specific monetary
award in the AID to judgment, rather than a division of property, . . . ." Id. In our case, the property
had been divided in the previous divorce decree and was not a specific monetary award similar to
alimony. The division was made at the time of the divorce decree and a judgment was entered,
which divested Holmes of any rights as to the property at issue. This suit is a motion to enforce the
previous division, not a motion to enforce a monetary award such as alimony. 
            The plain language of Section 9.003 applies to suits for enforcement of a decree which
divided the property in issue. Tex. Fam. Code Ann. § 9.003 (Vernon 1998). Section 9.003 does
not apply to a suit for division of property which was not divided on divorce. Tex. Fam. Code Ann.
§ 9.004 (Vernon 1998). In construing the predecessor to Section 9.003, the Amarillo Court of
Appeals held that military retirement benefits matured on payment of each installment. In re
Marriage of Reinauer, 946 S.W.2d 853, 860 (Tex. App.—Amarillo 1997, pet. denied). "In short,
limitations would accrue as to each installment." Id.; see Gonzales v. Gonzales, 728 S.W.2d 446,
448 (Tex. App.—San Antonio 1987, no writ). Therefore, the property in dispute here would not
mature or accrue until TRS made a payment to Holmes, and the limitations would accrue as to each
installment.
            The first installment paid by TRS to Holmes began in February 2000. The Kents filed suit
to enforce the divorce decree October 17, 2002. Section 9.003 does not bar recovery of any of the
installments paid by TRS to Holmes from November 2000 to the present. We sustain the Kents'
second point of error as to any payments from TRS to Holmes from November 2000.
Authentication of Exhibits
            The Kents' fifth point of error contends the trial court erred in admitting exhibits which were
not properly authenticated. See Banowsky v. State Farm Mut. Auto. Ins. Co., 876 S.W.2d 509, 513
(Tex. App.—Amarillo 1994, no writ), superseded by statute on other grounds as stated in Trusty
v. Strayhorn, 87 S.W.3d 756, 759 (Tex. App.—Texarkana 2002, no pet.). Holmes argues that the
Kents failed to object when the evidence was admitted at the December 5, 2002, hearing. 
            When the exhibits were admitted at the hearing December 5, 2002, the Kents' attorney stated
that he had "no objection." However, at the summary judgment hearing Feburary 27, 2003, the
Kents' attorney objected to the lack of a business records affidavit authenticating the exhibits. 
Holmes' attorney responded that the exhibits had been admitted at the prior hearing, and the trial
court ruled that "[t]hey have been previously admitted." 
            To preserve a complaint for our review, a party must have presented to the trial court a timely
request, objection, or motion that states the specific grounds for the desired ruling, if they are not
apparent from the context of the request, objection, or motion. See Tex. R. App. P. 33.1(a); see also
Tex. R. Evid. 103(a)(1). If a party fails to do this, error is not preserved, and the complaint is
waived. See Bushell v. Dean, 803 S.W.2d 711, 712 (Tex. 1991). The failure to properly object to
the defects in the authentication of exhibits in support of a motion for summary judgment or
response waives any error. Watts v. Hermann Hosp., 962 S.W.2d 102, 105 (Tex. App.—Houston
[1st Dist.] 1997, no pet.). We overrule the Kents' fifth point of error.
Nonassignability of Retirement Benefits
            In their seventh point of error, the Kents contend the nonassignability provisions concerning
the benefits do not apply to spouses or prevent partition of property in a divorce proceeding. Section
821.005 provides that:
All retirement allowances, annuities, refunded contributions, optional
benefits, money in the various retirement system accounts, and rights accrued or
accruing under this subtitle to any person are exempt from garnishment, attachment,
state and municipal taxation, sale, levy, and any other process, and are unassignable.

Tex. Gov't Code Ann. § 821.005 (Vernon 1994). Several Texas courts have held that retirement
benefits can be divided in a divorce proceeding despite the exemption provision applicable there. 
See Irving Fireman's Relief & Retirement Fund v. Sears, 803 S.W.2d 747, 749 (Tex. App.—Dallas
1990, no writ); Cain v. Cain, 746 S.W.2d 861, 863–64 (Tex. App.—El Paso 1988, writ denied);
Morgan v. Horton, 675 S.W.2d 602, 603 (Tex. App.—Dallas 1984, no writ); Collida v. Collida, 546
S.W.2d 708, 710 (Tex. Civ. App.—Beaumont 1977, writ dism'd). 
            These courts hold that the intended purpose of the provision is to protect the interests in the
retirement fund from creditors and assignees of the member, and found one spouse to be neither a
creditor nor an assignee of the other when, in a divorce proceeding, a division of community benefits
was sought. Morgan, 675 S.W.2d at 603; Collida, 546 S.W.2d at 710. The Dallas Court of Appeals
has held that the subsequent passage of a nonassignability clause did not modify the previous holding
that the nonassignability did not apply to divisions due to divorce. Sears, 803 S.W.2d at 749. We
agree. Thus, the trial court can impose a constructive trust on funds received by Holmes as annuity
payments in favor of the heirs under the estate until Holmes' death. Cf. Marsh v. Wallace, 924
S.W.2d 423, 424 n.1 (Tex. App.—Austin 1996, no writ). We sustain the Kents' seventh point of
error.
Reformation of Contract
            In their fourth point of error, the Kents argue they have sufficient standing as third-party
beneficiaries for the court to reform the contract between the estate and TRS to reflect the change
in beneficiaries. However, reformation of contract is not a remedy generally available for a unilateral
mistake.
            A third-party beneficiary does have standing to seek reformation of a contract. Merrimack
Mut. Fire Ins. Co. v. Allied Fairbanks Bank, 678 S.W.2d 574, 577 (Tex. App.—Houston [14th Dist.]
1984, writ ref'd n.r.e.). The general rule, though, is that a mistake that justifies relief must be a
mutual, not a unilateral, mistake. Cigna Ins. Co. v. Rubalcada, 960 S.W.2d 408, 412 (Tex.
App.—Houston [1st Dist.] 1998, no pet.). In certain circumstances, the principles of equity may
permit relief for a unilateral mistake. See id.; James T. Taylor & Son, Inc. v. Arlington Indep. Sch.
Dist., 160 Tex. 617, 620, 335 S.W.2d 371, 373 (1960). However, in the case of a unilateral mistake,
the reformation is not generally available as a remedy, although the unilateral mistake may be
grounds for rescission.


 The cases cited by the Kents concern rescission of a contract rather than
reformation. See Cigna Ins. Co., 960 S.W.2d at 412; James T. Taylor & Son, Inc., 335 S.W.2d at
373. Reformation of the contract is not a remedy available to the Kents based on the alleged
unilateral mistake. Further, TRS is not a party to this lawsuit. For these reasons, we overrule the
Kents' fourth point of error.
Conclusion
            Indulging all inferences from the summary judgment evidence in favor of the nonmovant,
we hold that a fact issue exists as to whether McWhorter intended for Holmes to collect as a
beneficiary of the optional annuity. If McWhorter did not intend for Holmes to collect as a
beneficiary, the divorce decree prevents Holmes from retaining the payments from TRS. Since
Holmes is designated as the beneficiary, and a change of beneficiary was not properly completed,
TRS is contractually bound to pay Holmes the annuity. However, due to the divorce judgment,
Holmes is not entitled to retain such payments unless the trial court determines McWhorter intended,
after the divorce, to give Holmes the annuity benefits. The statute of limitations does not bar suit
on payments made to Holmes beginning November 2000, and any error concerning the lack of
authentication of the exhibits was not preserved for review. The change of ownership and
beneficiary interests in the divorce was not an assignment controlled by the nonassignability clause
applicable to the retirement funds. Reformation of contract is not an available remedy. 
            We affirm the trial court's holding that the beneficiary of the annuity was not changed. 
Because a genuine issue of material fact exists concerning whether Holmes is entitled to the
payments, we reverse the judgment and remand the case to the trial court for a trial on the merits. 
If the court determines that McWhorter did not intend to give Holmes the annuity benefits after the
divorce, it should impose a constructive trust on all proceeds of the TRS retirement benefits payable
to Holmes from November 2000 in favor of the estate of McWhorter. 
 
 


                                                                        Jack Carter
                                                                        Justice

Date Submitted:          May 12, 2004
Date Decided:             June 9, 2004