COURT OF APPEALS

EIGHTH DISTRICT OF TEXAS

EL PASO, TEXAS



SERGIO A. CHACON,


 Appellant,


v.


KATHERINE W. CHACON,


 Appellee.
§


 


§


 


§


 


§


 


§


 


 § 


No. 08-06-00056-CV
 


Appeal from the


388th District Court 


of El Paso County, Texas 


(TC#2004CM5697) 


O P I N I O N


 This is an appeal from a final decree of divorce. Appellant Sergio Chacon raises three issues
for review. Finding no error, we affirm the trial court's judgment.

FACTUAL AND PROCEDURAL BACKGROUND

 Appellant Sergio Chacon (hereinafter "Sergio"), and Appellee Katherine Chacon
("Katherine"), were married May 31, 1986. Katherine filed for divorce in El Paso on September 9,
2004. The parties appeared before Associate Judge Robyne Bramblett on March 11, 2005. At the
conclusion of the hearing, the associate judge announced her recommendations on the record in open
court. Although the record does not contain a copy of Judge Bramblett's written recommendations,
it does indicate they were signed, and the parties notified, on March 14, 2005. (1)

 The associate judge granted the divorce "on the grounds of fault, as pled in the amended
petition." The property division awarded each party his or her personal possessions, automobiles,
and household furniture, as they had agreed before the hearing. The court ordered that the couple's
El Paso home be listed for sale immediately. The proceeds were to be split evenly, subject to
Sergio's $15,000 reimbursement claim for the down-payment funds his family had contributed
before the couple were married ("the down payment"). Katherine received her retirement account
with the Teacher Retirement System of Texas, minus Sergio's community interest. The court also
awarded Katherine $26,000 out of Sergio's interest in the retirement account, as reimbursement for
money the IRS had garnished from her salary, related to Sergio's two failed business ventures ("the
IRS debt"). The court made Sergio solely responsible for the tax liability and ordered him to
reimburse Katherine for any money the IRS continued to draw out of her paycheck. In addition,
Sergio was ordered to pay $2,700 in credit card debt incurred for his attorney's fees and court costs
after he was arrested in Arizona for DWI in 2004. The associate judge ordered Katherine to pay the
couple's remaining credit card debt.

 On March 16, 2005, Sergio filed an appeal from the associate judge's order, pursuant to
Texas Family Code section 201.015. He challenged the associate judge's recommendations as to: 
(1) the division of community property; (2) the division of community liabilities; and (3) the award
of attorney's fees. (2)

 The final divorce decree dissolved the marriage on the ground of cruelty. See Tex. Fam.
Code Ann. § 6.002. Sergio received 47 percent of the net proceeds from the sale of their house,
subject to a reimbursement claim for the IRS debt in Katherine's favor. He received all the personal
property in his possession or subject to his sole control at the time of the divorce. He was also
awarded a 47 percent interest in Katherine's retirement account, which the court once again made
subject to repayment of the IRS debt. Katherine was awarded the remaining 53 percent of the house
proceeds and her retirement account, as well as all her personal property. The court also ordered her
to pay all of the couple's credit card debt. The decree does not refer to Sergio's reimbursement claim
for the down payment. (3)

 Sergio raises three issues. First, he contends that the referring court lacked jurisdiction to
consider the divorce grounds and property character of the down payment, because these issues were
beyond the scope of the issues raised in his appeal from the associate judge. In Issue Nos. Two and
Three, he challenges the referring court's property division. For the reasons that follow, we will
affirm.

DISCUSSION

 In Issue No. One, Sergio argues that the referring court exceeded its jurisdiction by altering
the associate judge's recommendations on issues he did not specifically raise on appeal. First, Sergio
contends that the referring court did not have jurisdiction to grant a divorce on the basis of cruelty.
Second, he contends that the referring court did not have jurisdiction to re-characterize the down
payment as community property.

 Sergio's jurisdictional argument is based entirely on the language of section 201.015(b) of
the Texas Family Code, which he asks us to treat as a jurisdictional limit on the referring court. This
subsection states:

 An appeal to the referring court must be in writing specifying the findings and
conclusions of the associate judge to which the party objects. The appeal is limited
to the specified findings and conclusions.


Tex. Fam. Code Ann. § 201.015(b).


 Our primary goal when construing a statute is to ascertain and give effect to the legislature's
intent. Marcus Cable Assocs., L.P. v. Krohn, 90 S.W.3d 697, 706 (Tex. 2002). We begin by
construing statutes as written and, if possible, ascertain intent from the statutory language. Id. In
addition, we must always consider a statute as a whole and attempt to give effect to all provisions. 
Id.; see also Tex. Gov't Code Ann. § 311.021.

 We are unaware of any case law holding that section 201.015(b) is a limit on the referring
court's jurisdiction, and Sergio has cited us to no such authority. In 1998, this Court held that
section 201.015(f) (requiring the referring court to hold a de novo hearing within thirty days of the
date a party appeals an associate judge's decision) was not a limit on the referring court's
jurisdiction. Harrell v. Harrell, 986 S.W.2d 629, 631 (Tex. App.--El Paso 1998, no pet.) (citing
State ex rel. Latty v. Owens, 907 S.W.2d 484 (Tex. 1995)); see also Santikos v. Santikos, 920
S.W.2d 731, 733-34 (Tex. App.--Houston [1st Dist.] 1996, writ denied).

 Other provisions in Chapter 201 of the Texas Family Code are also instructive on the
relationship between associate judges and their referring courts. An associate judge's orders or
recommendations have only temporary effect, pending appeal to a referring court. Tex. Fam. Code
Ann. § 201.013(a). In cases where there is no appeal to the referring court, the findings and
recommendations of the associate judge will only become the order of the referring court when the
referring court signs an order conforming to the associate judge's report. Tex. Fam. Code Ann.
§ 201.013(b). In section 201.007, the legislature has not given associate judges the power to render
judgment outside the context of an agreed order or default. See Tex. Fam. Code Ann. § 201.007. 
Perhaps most significantly, section 201.014 gives the referring court the power to adopt, modify, or
reject the associate judge's report, in cases where there is no appeal from the associate judge's
proposed order or recommendation. See Tex. Fam. Code Ann. § 201.014. We believe it is highly
improbable that the legislature intended to give the referring court plenary power to reject all of an
associate judge's report when no appeal is filed, but only limited power to modify such a report when
an appeal is filed.

 In light of these provisions, we hold that section 201.015(b) is intended to limit the appealing
party's ability to raise issues he has not specifically appealed in the de novo hearing. It is not a limit
on the referring court's jurisdiction.

 Moreover, even if we were to assume arguendo that section 201.015(b) is a limit on the
referring court's jurisdiction, the facts of this case do not support Sergio's position. First, his
contention that the referring court exceeded its jurisdiction by granting divorce on cruelty grounds
is based on the premise that the final divorce decree differed from the associate judge's
recommendations. This is not the case. The associate judge recommended that the divorce be
granted "on the grounds of fault, as pled in the amended petition." The final divorce decree
identified cruelty as the basis for the divorce. (4) Cruelty is a "fault" ground for divorce. See Tex.
Fam. Code Ann. § 6.002. The referring court did not alter the recommendation on the grounds for
the divorce, it simply identified the fault ground which was supported by the evidence.

 Second, Sergio contends that his appeal was limited to the division of community property
and liabilities. Therefore, he contends, the referring court did not have jurisdiction to re-characterize
the down payment as community property. (5)
 Prior to the hearing, Sergio filed a claim for
reimbursement to his separate estate for the down payment. Sergio's father, Anistacio Chacon, Jr.,
testified that he gave his son a check for $15,000 shortly before the couple were married. The couple
used the money as a down payment on their home. Sergio testified the check was made out to the
title company and that he never deposited it in his own account. The associate judge recommended
that Sergio be reimbursed for the down payment when the couple sold their house. Since there is no
reference to $15,000 or to a down payment in the final divorce decree, we infer that the referring
court treated the funds as community property and included them in the division. See Garcia v.
Garcia, 170 S.W.3d 644, 648 (Tex. App.--El Paso 2005, no pet.).

 Sergio's appeal to the referring court included the "division of community property" and the
"division of community liabilities." The referring court holds a de novo hearing on issues appealed
from an associate judge. Tex. Fam. Code Ann. § 201.015(c). A trial de novo is a new and
independent action on those issues. In re E.M., 54 S.W.3d 849, 852 (Tex. App.--Corpus Christi
2001, no pet.) (citing Attorney General v. Orr, 989 S.W.2d 464, 467 (Tex. App.--Austin 1999, no
pet.)). A just and right division of the community estate begins with the characterization of assets
as separate or community property. See Cooper v. Cooper, 513 S.W.2d 229, 232 (Tex. Civ. App.--Houston [1st Dist.] 1974, no writ); see also Allen v. Allen, 704 S.W.2d 600, 603 (Tex. App.--Fort
Worth 1986, no writ) (citing Cooper, 513 S.W.2d at 232); Reiss v. Reiss, 40 S.W.3d 605, 615 (Tex.
App.--Houston [1st Dist.] 2001), rev'd on other grounds, 118 S.W.3d 439 (Tex. 2003).

 In the de novo hearing on the issue of property division, the referring court would have
properly begun by determining the character of each asset, including the down payment. Therefore,
the referring court did not exceed the bounds of the issue Sergio appealed by including the down
payment in the community estate. Issue No. One is overruled.

 In Issue No. Two, Sergio asserts that the referring court abused its discretion by dividing the
community estate in a manner that is manifestly unfair and unjust. The Texas Family Code gives
the trial court broad authority to determine a just and right division of the marital estate. See Tex.
Fam. Code Ann. § 7.001 Because the trial court is presumed to have properly exercised its
discretion, a property division will only be disturbed on appeal when the trial court has clearly
abused its discretion by ordering a division which is manifestly unfair and unjust. Murff v. Murff,
615 S.W.2d 696, 699 (Tex. 1981); Sprick v. Sprick, 25 S.W.3d 7, 14 (Tex. App.--El Paso 1999, pet.
denied). Our analysis has two prongs: (1) whether the trial court had sufficient information upon
which to exercise its discretion; and (2) whether the trial court abused its discretion by making a
property division that is manifestly unfair and unjust. Evans v. Evans, 14 S.W.3d 343, 346 (Tex.
App.--Houston [14th Dist.] 2000, no pet.). The party complaining of the trial court's division has
the burden of demonstrating that the division was so unjust that it is a clear abuse of discretion. 
Frommer v. Frommer, 981 S.W.2d 811, 814 (Tex. App.--Houston [1st Dist.] 1998, pet. dism'd). 
The trial court abuses its discretion when it acts arbitrarily or unreasonably, without regard to guiding
rules and principles. See Downer v. Aquamarine Operators, Inc., 701 S.W.2d 238, 241-42 (Tex.
1985).

 Sergio contends that the trial court abused its discretion by basing the property division on
fault. (6) He argues that, although the judgment purports to award him 47 percent of the community
real property, "the court gave virtually all property of value" to Katherine and almost all debt to
Sergio. This resulted, he argues, in "more than 100% distribution to [Katherine] and only debt to
[Sergio]."

 Community property does not need to be divided equally, but the division must be equitable. 
See Kimsey v. Kimsey, 965 S.W.2d 690, 704 (Tex. App.--El Paso 1998, pet. denied). The Texas
Supreme Court has given us a non-exclusive list of factors which the trial court may consider in
dividing the marital estate. See Murff, 615 S.W.2d at 698-99. These factors include the disparity
and abilities of income or earning capacity, the spouses' capacities and abilities, benefits which a
party not at fault would have derived from the marriage had it continued, business opportunities,
education, relative physical condition and obligations, disparity of ages, size of separate estates, and
nature of the property. Id.; see also Garcia v. Garcia, 170 S.W.3d 644, 653 (Tex. App.--El Paso
2005, no pet.). An unequal property division may not be used to punish the party at fault in the
divorce. See Ohendalski v. Ohendalski, 203 S.W.3d 910, 914 (Tex. App.--Beaumont 2006, no pet.).

 Our review of the trial court's division in this case is limited by Sergio's failure to timely
request findings of fact and is further complicated by his failure to file an inventory of assets and
debts. Sergio directs us to the referring court's September 30, 2005 letter ruling and contends that
the referring court based its property division on cruelty evidence of alcoholism and family violence. 
Prejudgment letter rulings do not constitute formal findings of fact and will not serve as a substitute
therefor. In re Shockley, 123 S.W.3d 642, 648 (Tex. App.--El Paso 2003, no pet.). In addition, even
if the record did affirmatively show the property division was based on the cruelty finding, it would
not be error. We have already determined that, in this context, the trial court could have considered
fault in its division.

 The other half of Sergio's argument focuses on percentage of assets versus debts he was
awarded. The community estate had two major assets, the equity in the couple's home in El Paso
and Katherine's retirement fund with the Teacher Retirement System of Texas. The divorce decree
awarded Sergio a 47 percent interest in both the proceeds from the sale of the home and the portion
of Katherine's retirement account which accrued during the marriage. The community estate also
had one major unsecured debt, the Federal Income Tax liability incurred by Sergio's corporations. 
The referring court made Sergio responsible for this debt and ordered him to reimburse Katherine
for the $26,000 which the IRS has garnished from her paychecks. The decree also imposed a lien
on Sergio's interest in proceeds from the sale of the house until Katherine was reimbursed for her
payments on the tax debt. Sergio argues that the effect of the liens is that Katherine has been
awarded 100 percent of the community estate. He contends that the referring court abused its
discretion because his portion of the equity in the house was not sufficient to cover the tax debt,
which he claims was "over $100,000.00."

 There was conflicting testimony on the amount of the IRS debt. According to Sergio's
testimony, the debt was incurred by two separate corporations. The first business was a family
venture which failed before the couple was married. Sergio managed the second company on his
own. He was not able to specify which company incurred more of the debt. He also failed to
provide the court with an exact value of the total debt. Katherine testified that, to her knowledge,
the IRS debt may have been as low as $50,000 or as high as $100,000. Also, Sergio's family
apparently paid some amount, but the record is silent as to how much. The market value of the home
is also in question. Katherine testified the house was worth $77,202. Sergio testified it was worth
$88,000.

 As we have already discussed, the referring court's review is de novo on the issues raised.
Tex. Fam. Code Ann. § 201.015(c). When Sergio appealed the associate judge's property division,
he was asking the referring court to evaluate the evidence de novo and apply the Murff factors to
determine a just and right division. Without findings of fact, we cannot know what the basis for the
division was or what values the court assigned to the debts and assets. Based on the record, the
referring court could have considered any number or combination of factors to arrive at the
arrangement it did. Therefore, Sergio has not demonstrated that the division was an abuse of
discretion. Issue No. Two is overruled.

 In Issue No. Three, Sergio contends that the trial court erred by imposing a lien on his 47
percent interest in Katherine's retirement account. The divorce decree states:

 IT IS ORDERED AND DECREED that the following described property is
confirmed as the separate property of KATHERINE W. CHACON:


 1. 100% of KATHERINE W. CHACON's retirement benefits in the
Teacher Retirement System of Texas arising out of KATHERINE W.
CHACON's employment with Ysleta Independent School District
from the first day of employment up to the date of marriage, May 31,
1986.


 2. Sergio Chacon's separate property interest shall be applied first to
reimburse Katherine Chacon $26,000.00 and then to satisfy any
unpaid federal income taxes incurred, but not yet paid.

 

Sergio argues the lien is illegal under section 821.005 of the Texas Government Code and Title I of
the Employee Retirement Income Security Act (ERISA). We disagree.

 Retirement benefits can be divided in a divorce proceeding despite the exemption provision
in section 821.005. Kent v. Holmes, 139 S.W.3d 120, 131-32 (Tex. App.--Texarkana 2004, pet.
filed) (citing Irving Fireman's Relief & Retirement Fund v. Sears, 803 S.W.2d 747, 749 (Tex. App.--Dallas 1990, no writ)); Cain v. Cain, 746 S.W.2d 861, 863-64 (Tex. App.--El Paso 1988, writ
denied); Morgan v. Horton, 675 S.W.2d 602, 603 (Tex. App.--Dallas 1984, no writ); Collida v.
Collida, 546 S.W.2d 708, 710 (Tex. Civ. App.--Beaumont 1977, writ dism'd). Sergio's argument,
however, goes one step further. He argues that the reimbursement lien for the payments Katherine
made on the IRS debt was illegally imposed on his interest in the account. He cites no case law to
support his argument, and we are unaware of a fellow court of appeals that has so held.

 The Texas Family Code requires a division of retirement benefits earned during the marriage. 
See Tex. Fam. Code Ann. § 7.003. The purpose of Texas Government Code section 821.005 is to
protect the interests in the Teacher Retirement Fund from a member's creditors, not from a
community property division in favor of another spouse. Kent, 139 S.W.3d at 132 (citing Morgan
v. Horton, 675 S.W.2d 602, 603 (Tex. App.--Dallas 1984, no writ); Collida, 546 S.W.2d at 710). 
In addition, "Trial courts are vested with the authority to grant equitable liens to secure the discharge
of payments from one spouse to the other." Siefkas v. Siefkas, 902 S.W.2d 72, 76 (Tex. App.--El
Paso 1995, no writ).

 The referring court gave Sergio a 47 percent interest in the portion of Katherine's retirement
account that she earned during the marriage. The decree also made Sergio solely responsible for the
IRS debt. He was ordered to reimburse Katherine for the money the IRS had garnished from her
salary, in addition to any amounts the IRS continued to garnish beyond the date of divorce. In this
division, the court ensured Katherine would be at least partially compensated for the payments she
had made on a debt for which Sergio was responsible. See Siefkas, 902 S.W.2d at 77 (upholding
former wife's possessory lien on property awarded to former husband, because possessory lien gave
husband "reasonable incentive" to pay mortgage debt).

 Sergio also argues the lien violates the anti-alienation provisions of ERISA. However,
ERISA specifically excludes "governmental plans" from its coverage. 29 U.S.C. § 1003(b)(1). A
governmental plan is defined as "a plan established or maintained for its employees by the
Government of the United States, by the government of any State or political subdivision thereof,
or by any agency or instrumentality of any of the foregoing." 29 U.S.C. § 1002(32). The Teacher
Retirement System of Texas "falls neatly into the definition of a governmental plan and is not,
therefore, subject to Title I of ERISA." In re Marriage of McDonald, 118 S.W.3d 829, 831 (Tex.
App.--Texarkana 2003, pet. denied). As the lien on Sergio's interest in the retirement account was
not prohibited by section 821.005 of the Texas Government Code or by Title I of ERISA, we
conclude the trial court did not abuse its discretion by imposing the lien. Issue No. Three is
overruled.

 Having overruled all of Appellant's issues, we affirm the judgment of the trial court.


 KENNETH R. CARR, Justice


April 26, 2007


Before Chew, C.J., McClure, and Carr, JJ.

1. Neither party argues that Associate Judge Bramblett's written recommendations were inconsistent with those
she announced on the record at the conclusion of the March 11 hearing. We will rely on the reporter's transcript of that
hearing to address Sergio's arguments in this opinion.
2. We will refer to the district court as the "referring court" in this opinion. See Tex. Fam. Code Ann.
§§ 201.005 (giving judges the authority to refer cases within their jurisdiction under Texas Family Code titles 1, 4, or
5 to an associate judge) and 201.015 (outlining the procedure for a party to appeal an associate judge's report to the
referring court).
3. We do not have the benefit of the referring court's findings of fact in this case. Sergio filed a request therefor
under Texas Rule of Civil Procedure 296. The referring court denied the request as untimely.
4. Katherine testified that Sergio was physically and emotionally abusive towards her on numerous occasions
throughout the marriage. On one occasion, she was hospitalized for a head wound after Sergio hit her over the head with
a beer bottle. She also testified that, six months before the couple separated, Sergio hit her on the head so hard she fell
to the floor. She explained that many times she was not sure what she would find when she got home from work in the
evening. Sometimes he was already passed out from drinking. Other times he would be out until the middle of the night
and she would have to let him into the house, because he was unable to find or use his keys.
5. Sergio has not challenged the characterization of the property, only the trial court's jurisdiction to alter the
associate judge's recommendations. This is significant. Sergio pled for reimbursement, as opposed to a separate
property interest in the home arising by virtue of a gift to him from his father. The purchase of property during marriage
partly with community funds (community financing) and partly with separate funds of one of the spouses creates a
tenancy in common between the separate and community estates, each owning an interest in the proportion that it supplies
to the consideration. Gleich v. Bongio, 128 Tex. 606, 99 S.W.2d 881, 883 (1937). In her brief, Katherine contends that
the money was a wedding gift to the couple. Both the Texas constitution and the Family Code clearly provide that any
property acquired by gift belongs to a party's separate estate. There can be no "gift" to the community. Jones v. Jones,
804 S.W.2d 623, 627 (Tex. App.--Texarkana 1991, no writ); Higgins v. Higgins, 458 S.W.2d 498 (Tex. Civ. App.--Eastland 1970, no writ). Statutory economic contribution is not mentioned by either party, and properly so. The
economic contribution statute does not apply to purchase money expended by a separate estate. The use of separate
property in the acquisition of property during marriage gives the contributing spouse equitable title to the extent the
contribution is not a gift. Garcia v. Garcia, 170 S.W.3d 644, 650 (Tex. App.--El Paso 2005, no pet.). But where, as
here, the appeal proceeds without findings of fact, we will presume the trial court made all findings necessary to support
the judgment. Id. at 648.

6. Sergio's argument is partially based on his assertion, in Issue No. One, that the trial court improperly granted
the divorce on the fault ground of cruelty. Sergio asserts that a trial court should not consider "fault" in the property
division incident to a divorce granted on insupportability grounds. He cites Phillips v. Phillips, 75 S.W.3d 564, 565,
574 (Tex. App.--Beaumont 2002, no pet.), for the proposition that fault may not be used as a factor in a property division,
when the divorce is granted solely on the ground of insupportability. Because we have determined that the trial court
did not err by granting this divorce on a "fault" ground, we need not address the issue presented in Phillips.